# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

ROBIN TAYLOR, on behalf of herself    :
and others similarly situated,    :    CASE NO. 21-cv-2744-MSS-CPT
    :
       Plaintiff,    :
    :
v.    :
    :
CARDINAL FINANCIAL    :
COMPANY, LIMITED    :
PARTNERSHIP    :
    :
       Defendant.    :
_____/

## MOTION FOR PRELIMINARY
## <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

## I.     INTRODUCTION

Representative Plaintiff Robin Taylor and Defendant Cardinal Financial Company, Limited Partnership have reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] resulting in a $7,200,000 Settlement for the benefit of the Class.  Defendant has also agreed to terminate its relationship with the lead aggregator that sold it the class member data used to make the calls at issue. This is an excellent result. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled factual and legal questions.

This motion seeks the entry of an order providing for, among other things:

1.  Preliminary approval of the Settlement;

2.  Approval of the Settlement Administrator;

3.  Approval of the Notice Plan describing: (a) the Settlement and Class Members' rights; (b) the proposed release of claims; (c) Class Counsel's request for attorneys' fees and expenses; and (d) the procedures and deadlines for opting-out of or for objecting to the Settlement and for making a claim;

4.  Approval of the claims process; and

5.  The scheduling of a Final Approval Hearing to consider final approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of preliminary approval for several reasons. *See* Declaration of Avi R. Kaufman (attached as Exhibit 2) at ¶ 2.

---

[1] The Settlement Agreement is attached hereto as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

1

First, the Settlement provides immediate monetary relief for Class Members and meaningful remedial relief aimed at preventing further unwanted telemarketing calls to the Class and public at large whereas Class Members' recovery, if any, would otherwise be uncertain given Defendant's consistent denials of liability and its otherwise vigorous defense of the Litigation. *Id*. And that relief is well within, if not above, the range of similar TCPA class action settlement. *Id*.

Second, prior to reaching the Settlement, the Parties engaged in extensive arm's-length negotiations, including two full day mediations with nationally renowned mediators – one with Samuel Heller of Upchurch Watson White & Max, and a second day long mediation with Jill Sperber of Judicate West, and follow up negotiations followed by months of continued negotiations between the Parties that ultimately resulted in the Settlement. *Id*.

Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or payment to Plaintiff, underscoring the fairness of the process. *Id*. For all these reasons, and as further described below, Representative Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

### a.  The Telephone Consumer Protection Act

The Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive

telemarketing calls…."[2] The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).  As a remedial statute that was passed to protect consumers from unsolicited automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

### b.  Procedural History

On November 23, 2021, Plaintiff Robin Taylor filed the complaint against Defendant in this action asserting that Cardinal Financial violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the Florida Telephone Solicitations Act, Fla. Stat. § 501.059, ("FTSA") by making automated calls to cellular telephone numbers and numbers on the National Do Not Call Registry. On January 18, 2022, Defendant answered the complaint. ECF 11.

Since that time, the case has involved extensive discovery leading up to class certification. There have been tens of thousands of pages of documents exchanged in discovery as well as several subpoenas sent to Cardinal Financial's lead provider, related vendors and Cardinal Financial's automated dialing company. Kaufman Decl. at ¶ 3. As a result of a discovery dispute, Plaintiff filed a motion to compel against Cardinal Financial, who refused to produce their records of automated calls.

---

[2]    FCC, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

ECF 21. After oral argument, Cardinal Financial agreed to produce such documents. ECF 31.

On August 29, 2022, the Parties attended a full day mediation with Samuel Heller of Upchurch Watson White & Max and a second day long mediation with Jill Sperber of Judicate West on November 9, 2022.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation through trial and appeals. Kaufman Decl. ¶ 6. Class Counsel have considered the strength of Defendant's defenses. Class Counsel have also considered the delays, uncertain outcomes, and risks of litigation generally, especially in complex actions such as this one.

Class Counsel believe that the proposed Settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. Kaufman Decl. ¶ 7. Based on their evaluation of all these factors, Representative Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Representative Plaintiff and the Class. *Id*.

## III.   SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the Settlement's material terms.

### a.   **The Settlement Class**

The Class is defined as all users or subscribers to cellular telephone numbers that were contacted by Defendant from November 23, 2017 through November 9,

2022 after having been supplied by iLeads.  For purposes of settlement the parties estimate the class consists of approximately 141,049 individuals. Agreement at ¶ 1.1.9.

### b.  Settlement Consideration

Pursuant to the Settlement Agreement, Defendant has agreed to a Settlement Sum of $7,200,000. The Settlement Sum will be used to pay (a) Approved Claims to Class Members, (b) Settlement Administration Expenses, and (c) Representative Plaintiff's attorneys' fees and costs.  Agreement at ¶ 1.1.38.

Moreover, Defendant has agreed to terminate its relationship with the lead aggregator that sold it the class member data used to make the calls at issue. This is an excellent result. Agreement at ¶ 1.1.9.

### c.  Settlement Administrator

Pending this Court's approval, Kroll Settlement Administration LLC will serve as the Settlement Administrator. The Settlement Administrator's responsibilities include:  i. providing CAFA notice; ii. establishing and maintaining the Class Settlement Website; iii. implementing the Notice Plan; iv. receiving, evaluating, and processing Claim Forms; v. providing reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel; vi. responding to any Class Member inquiries; vii. processing all opt-out requests from the Class; viii. performing the duties described in the Agreement, and any other function related to Settlement administration at the joint instruction of Class Counsel and Defendant; and ix. distributing payments to the Class Members that file Approved Claims, as

detailed in the Agreement. Agreement at §§ 6 and 7.

The anticipated Settlement Administration Expenses are approximately $170,000. Kaufman Decl. ¶ 8. Those costs are reasonable in light of the costs for, among other things, mailed notice, claim verification, and distribution of settlement funds to more than one hundred thousand Class Members. *Id*.

### d. **The Notice Plan**

The Settlement Administrator will be responsible for administering the Notice Plan.  The Notice Plan consists of three different components: (1) direct mailed Summary Notice; (2) direct emailed Summary Notice to the Class Members for whom the Parties identify email addresses; and (3) Long-Form Notice to be provided on the Class Settlement Website. Agreement at § 6. The forms of the proposed Long-Form Notice and Summary Notice agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B and C.

The Notice Plan is designed to provide the Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a description of the process for opting out of or objecting to the Settlement and the date by which to do so; a description of the process for submitting a Claim Form and the date by which it must be submitted; a description of Class Counsel's fee application; the date of the Final Approval Hearing; and information about where Class Members may access the Agreement and other important documents. The Notice Plan here is straightforward, easy to

6

understand for Class Members, and designed to inform them of their rights and the deadlines by which to exercise them under the Agreement. Kaufman Decl. ¶ 8.

The Settlement Administrator shall send direct notice within thirty (30) days after the Court enters the Preliminary Approval Order.  The Notice Plan is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case, and has been designed to satisfy the requirements of due process, including its desire to actually inform requirement. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950).

### e.  <u>Opt-Out and Objection Procedures</u>

Any Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be excluded from this Settlement. This written request for exclusion must be sent by mail to the Settlement Administrator at the address set forth in the Notice and postmarked no later than the Opt-Out Deadline.  Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. Agreement at ¶ 9.4.

Any objection to the Settlement must be in writing, and filed with the Court or mailed to the Clerk's Office by no later than the Opt-Out Deadline.  Class Members may object either on their own or through an attorney hired at their own expense.  If an objecting party wishes to present witnesses or evidence at the Final Approval Hearing in support of a timely and validly submitted objection, all

witnesses must be identified in the objection, and true and correct copies of all supporting evidence must be appended to, or filed and served with, the objection. Agreement at ¶ 9.2.

### f.  Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Class Members agree to release the claims set forth in paragraph 1.1.31 of the Agreement. The Released Claims are narrowly defined and include only claims that could have been brought in the Litigation relating to calling conduct. Kaufman Decl. ¶ 9.

Separately, Defendant has agreed to pay $5,000, subject to Court approval, in the interest of compromising Representative Plaintiff's individual claims not released in the Settlement Agreement against Defendant, as well as resolving all outstanding issues between Defendant and Plaintiff through the Effective Date. This payment to Plaintiff will be paid by Defendant directly and will not be paid from the Settlement Sum. Agreement at ¶ 4.3.

### g.  Claims Process and Calculation of Approved Claim Payments

Each member of the Class who does not timely opt-out from the Settlement shall be a Class Member and entitled to make a claim. The form of the proposed Claim Form agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, is attached to the Settlement Agreement as Exhibit A. Each Class Member who timely submits a valid Claim Form by the Claims Deadline shall be entitled to a payment in an amount of $51 per call less each Class Member's per call share of Settlement Administration Expenses and any Fee Award.

Agreement at § 4.

### h. Distribution of Settlement Sum

Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Sum all Approved Claims by checks made payable to the Class Members submitting Approved Claims. To the extent that any checks to Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a per call basis to Class Members who submitted an Approved Claim and who cashed their checks, if doing so is administratively and economically feasible (i.e., those Class Members would receive a second distribution of more than $5 after costs of administration).

### i. Class Counsel Fees and Expenses

Defendant has agreed to pay from the Settlement Sum reasonable attorneys' fees and costs to Class Counsel, in an amount to be determined by the Court. Agreement at § 5.

Class Counsel intends to apply to the Court for attorneys' fees totaling not more than one-third of the Settlement Sum ($2,400,000) and documented and reasonable expenses and costs incurred in the Litigation. Class Counsel's application for a Fee Award shall be filed no later than thirty-five (35) days prior to the Opt-Out Deadline. If the Court approves the Settlement, but declines to award a Fee Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Class Members. Agreement at § 5.

The Court should consider whether to grant or deny this award separate and apart from its consideration of the Settlement's fairness and reasonableness.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.    <u>The Legal Standard for Preliminary Approval</u>

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *E.g.*, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *E.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Approval of a class action settlement is a multi-step process involving preliminary and then final approval.  The Court's first step in granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the plaintiff must demonstrate that the proposed class and

proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4).

The second step in granting preliminary approval is to determine that the settlement falls "within the range of possible approval" or, otherwise stated, that there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *Manual for Compl. Lit.* § 1.46 at 62, 64-65 (1982)); *see also Newberg on Class Actions* § 13:13 (5th ed. 2016). "[P]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *7 (S.D. Fla. June 15, 2010); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011); *see De Cabrera v. Swift Beef Co.*, 2020 U.S. Dist. LEXIS 164615, at *13 (C.D. Cal. June 25, 2020) (A preliminary fairness determination is appropriate "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive …; (ii) the proponents have counsel

11

experienced in similar cases; (iii) there has been sufficient discovery ….").

The Court should take the first step in the process of approving the Settlement and grant preliminary approval. The Settlement was negotiated at arm's length, is clearly within the range of reasonableness, and otherwise satisfies all requirements for preliminary approval. In fact, the Settlement provides immediate and significant monetary and remedial relief.

### b. The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of preliminary approval of this Settlement. Kaufman Decl. ¶ 10. The Settlement was the result of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls well within the range of reasonableness. *Id*.

### i.    The Settlement Agreement is the Product of Serious, Informed and Arm's Length Negotiations

First, the proposed Settlement is the product of serious, informed, non-collusive negotiations. *E.g.*, *Cotton*, 559 F.2d at 1330. Settlements are generally found to be non-collusive when reached with the assistance of a third-party neutral, *e.g., Boring v. Bed Bath & Beyond of Cal. LLC*, 2013 U.S. Dist. LEXIS 165909, at *21 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc*., 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (approving settlement where "the parties conducted a significant amount of informal discovery…"). Here, the Settlement was negotiated with the assistance of Samuel Heller of Upchurch Watson White & Max and a

12

second day long mediation with Jill Sperber of Judicate West on November 9, 2022. Kaufman Decl. ¶ 11.

Moreover, this case included substantial discovery, with the settlement reached only after discovery was coming to a close, providing Class Counsel a full appreciation for the parties' respective factual and legal positions. *Id*. at ¶ 12. Class Counsel's understanding of the key issues driving the Litigation, including the likelihood of success of Defendant's anticipated challenge to class certification and anticipated motion for summary judgment, the strength of Defendant's defenses at trial, and the ever-shifting TCPA law landscape, prepared them for well-informed settlement negotiations. *Id*.

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case. Class Counsel have extensive experience and expertise prosecuting complex class actions, and are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id*. at ¶¶ 13-18; Declaration of Anthony Paronich, attached as Exhibit 3. Class Counsel zealously represented Plaintiff and the Class Members' interests throughout the Litigation and will continue to do so. Kaufman Decl. ¶ 19. And Defendant was ably represented by nationally recognized TCPA defense attorney Eric J. Troutman. *See* www.TCPAWorld.com. The Settlement is therefore the result of serious, arm's-length, and informed negotiations justifying preliminary approval.

### ii.  There Are No Obvious Deficiencies in the Settlement

The Settlement is reasonable and fair because it provides an excellent monetary result for Class Members and meaningful remedial relief in return for a narrow release tailored to the conduct and claims presented in the Litigation.  While payments for attorneys' fees and expenses are to be paid from the Settlement Sum, the Settlement is not conditioned on any such award and Defendant retains the right to object to any request for such award.

Additionally, the Settlement includes a comprehensive Notice Plan, which provides notice to Class Members of, among other things, the procedures and deadlines for opting out of or objecting to the Settlement or filing a Claim.  The Settlement also provides for a Settlement Administrator to coordinate notice to the class, any requests for exclusion, claims processing, and payments to Class Members upon final approval.

The Settlement provides no preferential treatment to any individual member of the Class.  Under the Settlement, everyone in the class is treated identically: each class member seeking to recover a portion of the Settlement Sum must submit the same Claim Form, and each class member submitting a valid Claim will receive the same distribution from the Settlement Sum.

Accordingly, there are no obvious deficiencies in the Settlement, and preliminary approval is warranted. *E.g., De Leon v. Ricoh USA, Inc.*, 2019 U.S. Dist. LEXIS 204442, at *31 (N.D. Cal. Nov. 25, 2019).

### iii.  The Settlement Is Within the Range of Possible Approval

When evaluating "the terms of the compromise in relation to the likely

benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *E.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each negligent violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See, e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Here, the monetary relief on a per Class Member basis and the remedial relief

15

agreed to by Defendant place the Settlement well within the range of possible approval. Kaufman Decl. ¶ 20. The total Settlement Sum available to the class to resolve this matter is $7,200,000, which is equal to $51 per Class Member. *Id*. This is an extraordinary result and exceeds the range of similar settlements in cases against large, publicly traded companies. *Id*.; *see, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each claimant would receive $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30 per claimant); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement of $24 per claimant, and finding that the settlement was an "excellent result").

Ultimately, any settlement requires the parties to balance the merits of the claims and defenses asserted against the risks of continued litigation and attendant delay. Kaufman Decl. ¶ 21. Plaintiff and Class Counsel believe that the Class Members' claims are meritorious and that Representative Plaintiff would prevail if this matter proceeded to trial. *Id*. Defendant has consistently denied any liability and is defended the action vigorously. *Id*. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation through trial and potentially appeals. *Id*. Class Counsel also have taken into account the strength of Defendant's defenses, potential difficulties in proving Plaintiff's claim, the uncertain outcome and risk of litigation especially in complex actions such as this one, the inherent delays in such litigation. *Id*. Class Counsel believe that the proposed Settlement confers substantial and immediate monetary

and non-monetary benefits upon the Class. *Id*. Based on their evaluation of all these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Plaintiff and the Class, who otherwise may have received nothing. *Id*.

The Settlement in the present case satisfies each of the factors generally considered by courts in this district on preliminary approval. Therefore, this Court should – consistent with the Eleventh Circuit's strong judicial policy favoring settlement – preliminarily approve the Settlement Agreement.

### c. **The Class Should be Certified for Settlement Purposes**

The Supreme Court has made clear that even when the Court determines that a settlement is fair under the strictures of Fed. R. Civ. P. 23(e), it still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

17

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Class defined in the Agreement. "[T]he 'settlement only' class has become a stock device in modern class action litigation." *In re American Int'l Group, Inc. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Class will allow notice of the Settlement to issue to inform Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Litig.*, at §§ 21.632, 21.633 (4th ed. 2004). For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

### i.  Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The issue is not the numerical size of the class but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hatisberry v. Lee*, 311 U.S. 32, 41 (1941). The proposed settlement class encompasses more than 100,000 individuals. This number of class members demonstrates that joinder is simply a logistical impossibility.

### ii.    Commonality

Rule 23(a)(2) next requires that there is "a common question of law or fact among the members of the class." As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The common questions must generate common "*answers*" that are "apt to drive the resolution of the litigation." *Id*. (citation omitted). Commonality is thus satisfied where the claims of all class members "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Under this "relatively light burden," the class action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Accordingly, it is "not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015).

Here, Plaintiff contends that the common questions are dispositive, apply equally to all class members, and can be resolved using common proof and uniform legal analysis. They include: 1) Is the dialing system utilized an automated system under the FTSA? 2) Did Defendant have the recipient's "prior express consent"

19

signed in writing? 3) Did Defendant appropriately screen class members on the Do Not Call Registry? 4) Are class members entitled to statutory damages? Plaintiff alleges that these legal and factual questions are shared by all class members.

### iii.    Typicality

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of the Settlement Class Members because her claims and the class's claims arise from Defendant's single course of conduct and are based on the same legal theories. Plaintiff has the same TCPA claims as all other Settlement Class Members who were called by Defendant.

### iv.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." First, Plaintiff's counsel are experienced class action lawyers whose combined experience in TCPA class actions, and current diligence and commitment to this litigation, will more than adequately protect the interests of the class. *See* Exhibits 2-3, Declarations of Counsel. Second, there is no conflict or antagonism whatsoever between the Plaintiff and the

Settlement Class Members. All share a united interest in putting an end to Defendant's allegedly illegal telemarketing practices, and all seek redress for the harm they suffered because of the practices.

### v.   Common Issues Predominate

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Settlement Class Members – including the key issue of whether Defendant had sufficient prior consent to make calls – focus on Defendant's conduct and can be resolved based on common evidence, including Defendant's records and Defendant's employees' testimony. Moreover, TCPA claims, by their nature, involve large numbers of plaintiffs who receive identical telemarketing contacts, a small number of defendants, and a common course of conduct that affected each plaintiff in the same way. Indeed, as another circuit court recently explained when affirming the certification of a class of individuals called while on the National Do Not Call Registry in violation of the TCPA and a subsequent jury verdict:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and

21

> disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer v. Dish Network, LLC,* 925 F.3d 643, 656 (4th Cir. 2019).

And that is precisely the circumstance here. Cardinal Financial obtained proposed class member telephone numbers from iLeads and then called them. Class members were harmed in the same way, through the receipt of unsolicited, telemarketing calls on their telephone numbers, and their damages are based on the same fixed arithmetic calculation.

### vi.    A Class Action Is the Superior Method Of Adjudicating This Matter

Relatedly, the Class satisfies Rule 23(b)(3)'s superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff's "claims under the TCPA." *See* Kaufman Decl. ¶ 22; *see Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

For these reasons, the Court should certify the Class.

### d.    <u>The Court Should Approve the Proposed Notice Plan</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement...." *Manual for*

22

*Compl. Litig.*, § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *Manual for Compl. Litig.*, § 21.312.

The Notice Plan satisfies this standard.  It will inform Class Members of the substantive terms of the Settlement, and their options for remaining part of the Settlement, for objecting to the Settlement or Class Counsel's fee application, for opting-out of the Settlement, for submitting a claim, and for obtaining additional information about the Settlement. Through the provision of (1) the Summary Notice, both directly by mail and email, and (2) the Long-Form Notice, which can be accessed on the Class Settlement Website, the Notice Plan is designed to directly reach a high percentage of Class Members and exceeds the requirements of due process. Kaufman Decl. ¶ 8. Therefore, the Court should approve the Notice Plan and Notices.

## V.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court should set a date and time for the Final Approval Hearing, and the other deadlines in the Settlement approval process. Class Counsel propose the following schedule:

| **Event** | **Date** |
| --- | --- |
| Notice Date | 30 days after Preliminary Approval |
| Deadline for filing papers in support of Class Counsel's application for an award of attorneys' fees and expenses | 35 days prior to Opt-Out Deadline |

| Claims Deadline | 60 days after the Notice Date |
| Opt-Out Deadline | 60 days after the Notice Date |
| Deadline for filing Motion for Final Approval | 15 days prior to the Final Approval Hearing |
| Responses to Objections | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | 90 days after entry of Preliminary Approval |

## VI.    CONCLUSION

Based on the foregoing, Representative Plaintiff and Class Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) provisionally grant certification of the Class and appointment of Plaintiff Taylor and Avi R. Kaufman of Kaufman P.A. and Anthony Paronich of the Paronich Law, P.C. as Representative Plaintiff and Class Counsel for purposes of the Settlement; (3) approve the Notice Plan and Notices; (4) approve the Claims process; (5) approve the opt-out and objection procedures; and (6) schedule a Final Approval Hearing.

### **Local Rule 3.01(g) Certification**

I certify that Class Counsel met and conferred with counsel for Defendant, via email and phone, and Defendant agrees to the preliminary approval of the Settlement Agreement while reserving all rights.

DATED January 19, 2023                    Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman
Florida State Bar # 84382
kaufman@kaufmanpa.com
Rachel E. Kaufman

24

Florida State Bar # 87406
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Anthony I. Paronich (admitted *pro hac vice*)
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorneys for Representative Plaintiff and
the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*