# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

ROBIN TAYLOR, on behalf of herself
and others similarly situated,

    Plaintiff,

v.

CARDINAL FINANCIAL
COMPANY, LIMITED
PARTNERSHIP

    Defendant.

CASE NO. 21-cv-2744-MSS-CPT

**PLAINTIFF'S AND CLASS COUNSEL'S MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND INCORPORATED MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION**

Representative Plaintiff Robin Taylor and Defendant Cardinal Financial Company, Limited Partnership have reached a class action settlement agreement ("Settlement Agreement" or "Agreement")[1] resulting in a $7,200,000 settlement for the benefit of the Class.  Defendant has also agreed to terminate its relationship with the lead aggregator that sold it the class member data used to make the calls at issue. This meaningful remedial relief itself is valued at $4,201,204 for the Settlement Class. *See* Economic Assessment of Remedial Relief in Class Action Settlement Agreement, prepared by Jon Haghayeghi, Ph.D., ECF 49-1, ("Haghayeghi Report"). The total economic value of the relief to be provided by Defendant to Settlement Class members pursuant to the Agreement is therefore $11.4 million.

This is an excellent result. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled factual and legal questions.

On February 23, 2023, the Court preliminarily approved the Settlement. ECF 47. Accordingly, Plaintiff and Class Counsel hereby move for final approval of the settlement for the reasons set forth in this memorandum and in the papers previously submitted in support of approval. Specifically, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to the settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and

---

[1] The Settlement Agreement can be found at ECF 46-1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as class representative; (4) appoint Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A. and Anthony Paronich of Paronich Law, P.C. as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.[2]

## II. BACKGROUND

On November 23, 2021, Plaintiff Robin Taylor filed the complaint against Defendant in this action asserting that Cardinal Financial violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the Florida Telephone Solicitations Act, Fla. Stat. § 501.059, ("FTSA") by making automated calls to cellular telephone numbers and numbers on the National Do Not Call Registry. On January 18, 2022, Defendant answered the complaint. ECF 11.

Since that time, the case has involved extensive discovery leading up to class certification. There have been tens of thousands of pages of documents exchanged in discovery as well as documents produced in response to multiple subpoenas sent to Cardinal Financial's vendors, including its lead provider and dialer provider. Declaration of Avi Kaufman, attached as Exhibit 2, at ¶ 4. As a result of a discovery dispute, Plaintiff filed a motion to compel against Cardinal Financial, who refused to produce their records of automated calls. ECF 21. At the hearing on Plaintiff's motion, Cardinal Financial agreed to produce such documents. ECF 31. Plaintiff then engaged in extensive expert analysis of the call and consent records that were produced, and, on October 3, 2022, served the expert report of Plaintiff's telephone

---

[2] A proposed order is attached as Exhibit 1.

expert Aaron Woolfson on Defendant.

On August 29, 2022, the Parties attended a full day mediation with Samuel Heller of Upchurch Watson White & Max. On November 9, 2022, the Parties attended a second day long mediation with Jill Sperber of Judicate West.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation through trial and appeals. Kaufman Decl. ¶ 7. Class Counsel have considered the strength of Defendant's defenses, including specifically Defendant's consent defense, Defendant's consistent denials of liability, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law, including a ruling by this Court concerning the constitutionality of the TCPA, could nullify some or all of Plaintiff's claims, *see id.*; *Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 591 U.S. \_\_\_, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*). Plaintiff's counsel believes that the proposed settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. Kaufman Decl. ¶ 7. Based on their evaluation of all these factors, Plaintiff and Plaintiff's counsel determined that the settlement is in the best

interests of Plaintiff and the Class. *Id*.

The settlement establishes a Class of: All users or subscribers to cellular telephone numbers that were contacted by Defendant from November 23, 2017 through November 9, 2022 after having been supplied by iLeads. For purposes of settlement the parties estimate the class consists of approximately 141,049 individuals. Agreement at ¶ 1.1.9.

Pursuant to the Settlement Agreement, upon preliminary approval, Defendant caused to be available a settlement fund in the amount of $7,200,000. Agreement at ¶ 1.1.38. Moreover, as a result of this litigation, Defendant has also agreed to terminate its relationship with the lead aggregator that sold it the class member data used to make the calls at issue. Agreement at ¶ 1.1.9. This remedial relief has a value of $4,201,204 over five years for Class members and the public at large, bringing the settlement's total value to $11,401,204. Haghayeghi Report at pg. 6.

The settlement confers substantial and immediate benefits upon the Class and society whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendant's defenses, including specifically its consent defense, the uncertainties of contested litigation, Defendant's financial condition, and the everchanging TCPA landscape, including district courts' ongoing scrutiny of the constitutionality of the TCPA and the scope of the FTSA. *See* Kaufman Decl. ¶ 9.

### III. IMPLEMENTATION OF THE PROPOSED SETTLEMENT

4

The Court entered its Order Granting Preliminary Approval of the Settlement on February 23, 2023. ECF 47. Both before and after that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Settlement Agreement. Declaration of Scott Fenwick, Settlement Administrator, attached as Exhibit 3.

Specifically, on January 27, 2023, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and 56 State Attorneys General.  Settlement Administrator Decl. at ¶ 6.

On January 26, 2023, Kroll received a data file from Defendant consisting of 141,049 telephone numbers for potential Class Members. In order to compile a service list to provide Summary Notice to Class Members, Kroll performed reverse phone number searches pursuant to the Settlement Agreement, obtaining a total of 139,167 names and addresses and 96,580 email addresses. *Id*. at ¶ 4.

On February 17, 2023, Kroll launched the Class Settlement Website and the toll-free settlement information hotline. *Id*. at ¶¶ 7, 8.  Since that time, the Class Settlement Website has had 37,910 page views, and the toll-free settlement information hotline has received 323 calls. *Id*.

On March 27, 2023, Kroll commenced the email and mail notice program. *Id*. at ¶¶ 10-11. Kroll has determined that mailed Summary Notices likely reached 135,288 of the 139,167 persons to whom a Summary Notice was mailed, which equates to a reach rate of the direct mail Notice of approximately 97.21%.  Kroll

has also determined the emailed Notices likely reached 69,950 of these same persons. *Id*. at ¶ 14.

In response to these robust notice efforts, Kroll has received 10,779 timely Claim Forms through the mail and, 4,908 Claim Forms filed electronically through the Class Settlement Website. *Id*. at ¶ 15. Moreover, only one Class Member has opted out, and no Class Members have filed or otherwise submitted objections regarding the settlement. *Id*. at ¶¶ 15-17. This is an excellent result.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The settlement here is more than sufficient under Rule 23(e) and final approval is clearly warranted.

### 1. Notice was the Best Practicable and was Reasonably Calculated to Inform the Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit. § 21.312 (listing relevant information).

The Notice Plan satisfies these criteria. As recited in the Settlement Agreement and above, the Notice Plan informed Class Members of the substantive terms of the settlement. It also advised Class Members of their options for remaining part of the Class, for objecting to the settlement, Class Counsel's attorneys' fee application, or for opting-out of the settlement, and how to obtain additional information about the settlement. The Notice Plan was designed to directly reach a high percentage of Class Members. Specifically, the individual mailed notice portion of the Notice Plan reached 97% of the members of the Class, and the reach was further enhanced by the emailed

notice, Class Settlement Website, and the Settlement hotline. Settlement Administrator Declaration at ¶ 14. This exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Plan and the form and content of the Notices.

Based on the claims submitted, to date, greater than 11% of class members have filed claims, which exceeds the claim rate in many cases. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims).

The success of the Notice Plan is evident in the 11% claim rate, which exceeds the claim rate in many cases. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims). The current claims rate of 11% is a significant claims rate and exceeds the rate seen in the majority of similarly structured settlements. *See* Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, Federal Trade Commission, September 2019, at 11, haps ://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns (median claims rate is 9% and weighted mean (cases weighted by the number of notice recipients) is 4%). *See, e.g., Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 625-26 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of

approximately 1.1%). *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting that claims rates in consumer class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"). Indeed, as explained in *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726-GOODMAN, 2015 U.S. Dist. LEXIS 151744, at *48-50 (S.D. Fla. Nov. 9, 2015), "Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates. . . . In addition, courts often grant final approval of class action settlements before the final claims deadline. . . . The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." (internal citations omitted).

### 2. The Settlement Should Be Approved as Fair, Reasonable, and Adequate

In deciding whether to approve the settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting Manual for Complex Litigation (Third) § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a

settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
>
> (2) the complexity, expense, and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the probability of the plaintiffs' success on the merits;
>
> (5) the range of possible recovery; and
>
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this settlement to be eminently fair, reasonable, and adequate.

### i. There Was No Fraud or Collusion

The contested nature of the proceedings in this action demonstrates the absence of fraud or collusion behind the settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *10 (M.D. Fla. Apr. 23, 2020)

(internal citation omitted).

With the benefit of discovery, the Parties engaged in intensive arm's-length negotiations with the assistance of two mediators at different points during the litigation to resolve the case with a view toward achieving substantial benefits for the Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. *See* Kaufman Decl. ¶ 5. Plaintiff and the Class were represented by experienced counsel throughout the negotiations and benefited from mediating with experienced mediators. "The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Ex. Corp.*, No. C03-2659, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

### ii. The Settlement Will Avert Years of Complex Expensive Litigation

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) ("a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial"). In contrast, the settlement provides immediate and substantial monetary benefits and remedial relief to the Class.

As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future,

11

> after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present settlement.

### iii. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the settlement with the benefit of extensive discovery, including tens of thousands of pages of documents exchanged in discovery as well as documents produced in response to multiple subpoenas sent to Cardinal Financial's vendors, including its lead provider and dialer provider. Kaufman Decl. ¶ 4. Plaintiff also spent considerable time researching and navigating Defendant's defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the

litigation proceeded to judgment on a class-wide basis. *Id.* ¶¶ 4-8.

### iv. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993).

The recovery achieved by this settlement must be measured against the fact that any recovery by Plaintiff and Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; (ii) the final judgment was affirmed on appeal; and (iii) Defendant was then able to satisfy the final judgment. The settlement is an extremely fair and reasonable recovery for the Class in light of Defendant's defenses, including specifically its consent defense, and the challenging and unpredictable path of litigation Plaintiff and any certified class would have faced absent the settlement. Kaufman Decl. ¶ 8.

Despite Plaintiff's confidence that this Court would certify the proposed class, she recognizes that class certification is far from automatic. *Compare Head v. Citibank, Inc.*, 340 F.R.D. 145 (D. Ariz. 2022) (certifying a TCPA class over objection) *with Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247, at *2 (C.D. Cal. Apr. 28, 2019) (denying class certification); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 271–72 (M.D. Fla. 2019) (same). The risks of the litigation, including the ever-changing TCPA landscape, the complexity of the issues involved.

13

Interpretations of the TCPA are ever-evolving and notoriously unpredictable, and the FTSA was only recently passed and remains mostly untested, further injecting uncertainty into the outcome. And even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award to permit reassessment of that question guided by the applicable factors.").

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of final approval. The uncertainties and delays from this process would have been significant. Kaufman Decl. ¶¶ 7- 8.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the settlement providing benefits to the Class and society valued at over $11.4 million, including $7.2 million in monetary relief for the Class and meaningful injunctive relief valued at over $4.2 million, represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise."); *Morales v.*

14

*Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### v. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate Compared to the Range of Possible Recovery

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

As discussed above, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Kaufman Decl. ¶¶ 4-8. Pursuant to the TCPA and FTSA, each injured Class Member could have received $500 for each violation upon a successful verdict at trial, but such a result was uncertain and may have required years of litigation, and, even then, may have resulted in no recovery at all given the changes in governing TCPA and FTSA law and the total amount of potential damages arising from calls to Class Members.

Given the significant litigation risks the class faced, the settlement represents a successful result. Rather than facing years of costly and uncertain litigation, the

settlement makes available an immediate cash benefit of $7.2 million to Class Members and provides meaningful remedial relief, with a total value of $11.4 million. Kaufman Decl. ¶ 9. The monetary relief alone is significant and exceeds the range of similar settlements. The per claiming Settlement Class Member recovery is expected to be approximately $33. *Id*. at ¶ 11. This amount is greater than the per claim payouts in the vast majority of TCPA class action settlements, including in cases involving direct liability against companies larger than Defendant. *See, e.g., Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (direct liability; $20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (direct liability; $30 per claimant); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (direct liability; $24 per claimant; deemed an "excellent result"); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF 86 (S.D. Fla. Jan. 16, 2020) (direct liability; $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, ECF 44 (S.D. Fla. Nov. 1, 2019) (direct liability; $9, less attorneys' fees, costs, administration costs, and service award, per claimant).

      Underscoring the fairness of the compensation recovered for Class Members, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action—less than what participating Class Members stand to receive here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D.

16

Ga. Jan. 30, 2017). Here, Plaintiff's counsel have secured a result that exceeds the recovery in *Markos*.

### vi. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval

The settlement provides an extremely fair and reasonable recovery for the Class given the combined litigation risks, including the strength of Defendant's defenses, the challenging and unpredictable path of litigation, and the changing TCPA and FTSA law landscape. Class Counsel strongly endorse the settlement given the significant risks in proceeding with litigating this case. Kaufman Decl. ¶ 12. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. [T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

To date, there have been no objections and only one opt out from the settlement. Administrator Decl. ¶ 17. Even if there were some objections (and there are none at this time), it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3. The Court Should Certify the Class

This Court provisionally certified the Class for settlement purposes only. ECF 47. For all the reasons set forth in Plaintiff's preliminary approval briefing (ECF 46), incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Based on the foregoing, the settlement is fair, reasonable, and adequate.

## V.  CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the settlement; (2) certify for settlement purposes the Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as class representative; (4) appoint Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A. and Anthony I. Paronich of Paronich Law, P.C., as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.

### Local Rule 3.01(g) Certification

I certify that on June 12, 2023 counsel for Plaintiff met and conferred with counsel for Defendant, by telephone, and Defendant does not oppose the request for final approval of the settlement, while reserving all rights.

DATED June 12, 2023                              Respectfully submitted,

                                                                       */s/ Avi R. Kaufman*
                                                                       Avi R. Kaufman

Florida State Bar # 84382
kaufman@kaufmanpa.com
Rachel E. Kaufman
Florida State Bar # 87406
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Anthony I. Paronich (admitted *pro hac vice*)
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorneys for Representative Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Avi R. Kaufman